[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a two-count civil tort action alleging (1) negligence and (2) assault and battery. A trial to the court was held on December 18, 1997. After carefully considering the evidence presented during the course of that trial, including an assessment of the credibility of the witnesses, and giving due consideration to the post-trial brief submitted by counsel for CT Page 3976 the defendant, the court finds the following facts to have been proven.[1]
On the evening of July 18, 1994 the plaintiff, Corrina Staubach, and her friend, Barbara Nangle, went to the Meetinghouse Pub in Tolland, Connecticut to play pool. While at the pub they met Scott Stone, with whom Staubach was acquainted, and two of Stone's friends. Thereafter, Staubach and Nangle were invited by Stone to go swimming at Stone's mother's house at 55 Meadowwood Road, Tolland, Connecticut. They arrived at the house shortly after 1:00 A.M., changed into borrowed clothing, and went swimming in an outside pool for a little over an hour. There was some consumption alcohol both at the pub and at the residence but there is no evidence that anyone was under the influence of alcohol.
There is a difference in the testimony of Stone on one hand, and Staubach and Nangle on the other, regarding the conduct of the parties at the pool. No other witnesses testified in this trial. Stone testified that there was general horseplay in and around the pool including people being pushed into the pool. He vaguely remembered the pool deck to having been slippery. Staubach and Nangle testified that everyone was having a good time but that there was no horseplay and no one was being pushed into the pool. Both women testified that the deck was not slippery. The court finds the testimony of Barbara Nangle to be particularly credible regarding the events at the Stone residence. Specifically, the court finds that prior to the incident in question there was no general horseplay, individuals were not being pushed into the pool, and the deck was not slippery.
When they decided to leave Staubach and Nangle went into the house, changed back into their regular clothes, and returned to the pool area to say goodbye. At that time, without warning of any kind, Stone pushed Nangle, who was fully clothed, into the pool. He then picked up Staubach, who was also fully clothed, with the intention of throwing her into the pool but in the process he dropped her on her back on the pool deck. She struck the deck and fell into the pool. The two women thereafter went to Nangle's residence for the remainder of the night. The court finds that while the defendant did intend to pick up the plaintiff and throw her into the swimming pool, he did not intend to cause harm to the plaintiff.
Upon awakening the morning after the incident Staubach CT Page 3977 experienced stiffness and soreness in her left shoulder and arm which went away after a few days. However, several weeks later she began to experience stiffness and pain in her neck, shoulder, and back. She testified that she had not experienced these symptoms prior to the incident of July 19, 1994.
On August 22, 1994 Staubach consulted with Dr. Brian Batherson, a chiropractor, for treatment of the pain the her left shoulder and the left side of her neck. Following a physical examination and a review of x-rays taken of her neck and shoulder, Dr. Batherson diagnosed her condition as "musculotendonous injury with a secondary milder ligamentous sprain." In his report (Exhibit A) Dr. Batherson stated: "After reviewing the patient's history, specifically noting the mechanism of injury and correlating that with her clinical findings, I can state with reasonable medical certainty that the incident that took place on 7-19-94 on the deck of the pool is directly attributable to her present condition and symptoms."
Once the defendant decided to pick the plaintiff up without her consent with the intention of throwing her into the swimming pool, he acquired a duty of care not to cause her any injury or harm. A reasonably prudent person in that situation should know or anticipate that picking up a person without her consent and cooperation could result in the person being dropped and injured. That was certainly a foreseeable consequence of the defendant's actions. The court finds that the defendant did not exercise the standard of care required of him under the circumstances of this case. The court finds by a fair preponderance of the evidence that the proximate cause of the injury to the plaintiff was the defendant's negligence in dropping the plaintiff onto the deck of the swimming pool on the night of July 19, 1994.
Dr. Batherson determined the plaintiff's prognosis to be excellent at the time of his diagnosis and began a conservative course of treatment including electrical muscle stimulation and exercise. According to her "patient ledger" (Exhibit B) the plaintiff was seen and treated in Dr. Batherson's office approximately 40 times between August 23, 1994 and October 7, 1997. Her total medical bill for diagnosis and treatment was $4077.26. While the plaintiff did not lose any time from work as the result of her condition, she did experience pain and suffering as a direct result of her injury. Dr. Batherson concluded that the plaintiff suffered a permanent partial impairment of her spine as the result of this injury. He assessed CT Page 3978 the percentage of the impairment to be 5 percent. However, there is no evidence to prove that the plaintiff will suffer any diminution of future wages based upon the nature of her injury.
As to the first count of the complaint, Negligence, the court finds that the plaintiff has proven her case by a fair preponderance of the evidence. Therefore, judgement shall enter for the plaintiff as to the first count of the complaint.
As to the second count of the complaint, Assault and Battery, the court finds that the plaintiff has not proven by a fair preponderance of the evidence that the defendant's acts constituted the tort of Assault and Battery as alleged in the complaint. Therefore, judgement shall enter for the defendant as to the second count of the complaint.
The court awards the plaintiff compensatory damages in the amount of $10,000 representing economic damages in the amount of $4077 and non-economic damages in the amount of $5923.
Per order of the court this 19th day of March, 1998.
Terence A. Sullivan, J. Superior Court Judge